All right, our next case is Parker v. Governor of PA, number 20-3518. If I could just – this is for both parties. The appellant – one of the first lines in the appellant's brief is, there's no end date for the mask mandate. We're interested in whether this is moot, at least the mask mandate part of it, as well as standing for both claims. So if you could address the – both parties, if you could address that, that would be great. Thank you. Good morning, Your Honor. May it please the Court, I'm Robert Muse, and it's my honor and privilege to represent the plaintiff's appellants in this case. And I'd like to reserve three minutes of my time for rebuttal. That'll be granted. And I will quickly get to the judge's concerns, as I fully expected. But, you know, this is a constitutional challenge to the mask mandate and the contact tracing program in the context of a denial for a preliminary injunction. Now, if this Court granted the injunction, that doesn't mean that the state can't develop a contact tracing program that is constitutional and maintains the constitutional safeguards, nor does it require – nor does it prohibit the state from strongly encouraging people to wear masks. They just can't compel them under penalty. As we put in the brief, and as the Court's likely aware, Governor Wolf was exempt from his own pandemic order on social gatherings when he marched en masse with the Black Lives Matter protesters. How does defying a rule make one exempt from the rule? People speed all the time, but that doesn't mean they're exempt from the speeding laws. Well, Secretary Levin made it very clear that his First Amendment activity was protected and was, in fact, exempt from the social gathering order. How many prosecutions have there been for violating the mask mandate in Pennsylvania? Your Honor, I'm not aware of any. There's none in the record, but the fact that it's – And your client's church could have had gatherings without requiring them to wear masks? Well, the church gathering issue in the record was for the contact tracing program, not – because there they required the reporting of individuals there. So the contact tracing program is dealing with the right of association. But regardless of all that, the mask mandate's been rescinded. On June 28th. So the case is moot. It's not moot, Your Honor. Why not? Under two pretty well-established doctrines. The very first one is the voluntary cessation doctrine. The voluntary cessation of illegal conduct does not deprive the court the power to hear and decide the case, including the power to issue injunctive release. W.T. Grant is one of the cases that established that early on. And the court said not only is the defendant free to return to his old ways, but also the public has an interest in determining the legality of the practice. Which case are you saying? Well, W.T. Grant, and then I'm going to get to more specific. How about our Butler case? Didn't we say the government's presumed to act in good faith? Your Honor, and let's – I'll get to the next case, which I think is even more important, is the Roman Catholic Diocese of Brooklyn v. Coelho. In that case, dealing with emergency injunctive relief, it's 141 Supreme Court, 63, and the pinpoint site is 68 to 69. The Supreme Court held the plaintiff's challenge to a state COVID-19 pandemic order limiting attendance at religious services was not moot, even though the state had changed the attendance limits. And the court reasoned that the plaintiff's, quote, remained under a constant threat, unquote, that the state will reimpose the mandate. Tannen v. Newsom, same outcome. There, the Supreme Court held that the plaintiff's challenge to the state COVID-19 pandemic order limiting gatherings, including gatherings for religious activities, even though they changed the policy, was not moot because they can always go back to their own ways. There's nothing that's prohibiting the health department or the governor from tomorrow reinstating the mandate. In fact, we know from the way these goalposts just keep changing. Isn't that invoking the capable of repetition but evading review exception? That's the next one, Your Honor. I'm having trouble seeing how this would evade review. Let's assume cases continue to rise this fall, and then they impose a new mask mandate. You file a case, and you're in the game, right? And that case will be adjudicated. They can't sort of remove the mask mandate every time you file a case, and that's not what happened here. They just removed the mask mandate because they felt like the number of cases had evaded sufficiently, right? Yeah, I understand, Your Honor. I'll get to that because there were two, as I mentioned, there were two from the beginning. There's the voluntary cessation doctrine, which the Supreme Court has relied on, and there's also capable of repetition evading review, and I'll get to that in just one more moment because just this last month in Resurrection School, which is a mask mandate case in the Sixth Circuit, and in that case, they applied both the voluntary cessation doctrine and capable of repetition but evading review in the context of a mask mandate and held that the case was not, in fact, moved. Well, what about our County of Butler case? You're saying a lot about circuit cases. I mean, we decided a very similar case. But I think the Supreme Court cases make clear that it is appropriate in this particular context to apply the voluntary cessation doctrine and that the case is not moved with regard to the mask mandate. Now, with regard to the capable of repetition but evading review, again, that's another exception to the mootness doctrine. It applies to situations where, one, the action was in duration too short to be fully litigated prior to cessation or expiration, and there's a reasonable expectation that the same complaining party will be faced, once again, with the restriction. The Supreme Court has held that periods of up to two years could be too short to be fully litigated. And that's the problem. I mean, we filed this litigation. We filed this lawsuit in September. We immediately filed a preliminary injunction motion. We had the hearing in November. We filed it for an emergency injunction pending appeal. That was denied. And here we are on September 23rd. We finally get a chance. So the judge, with all due respect, to say that, you know, we could get a hearing that quickly and get something on the mask mandate, these goalposts just keep changing and changing. And the recurrence in the capable of repetition evading review, it just has to be capable of repetition. All right, but how about reasonable expectation of a second statewide mandate? Is that really, I mean, is it really reasonable, particularly looking at our Butler, what we said in Butler? And also, I mean, it's in the papers, but the governor has said that they wouldn't be enacting a second statewide mask mandate because of the vaccine. I mean, how is it the reasonable expectation that a second mask mandate will occur? Well, we've got the mask mandate now in the public schools. Well, but we're talking about the statewide one here. Right, and there's mask mandates galore even when people are vaccinated, people ordering the masks. You know, there's kind of this strange paradox, right? And it's also in the context of standing for the contact tracing program. We're being told, you know, how infectious this disease is, how capable of quickly it's spreading, and so forth we're hearing now, you know, all these breakthrough cases with the vaccine. But then, so on one hand, this thing is, you know, so contagious it's going to affect everybody in the world that everybody has to get the mandate. But yet, my clients somehow immune from this that they don't have standing because there's no, you know, there's no imminent harm or danger to them. I mean, which one is it? Is this such a, you know, a serious, you know, disease and virus? And oh, by the way, and the reason why I brought up the Black Lives Matter issue, because that completely undermines the government's justification for these restrictions. You know, why are they able to, what science says that, you know, Black Lives Matter protests en masse, thousands of people shoulder to shoulder, many not wearing masks? Where's the science that says that's okay, but, you know, it's not okay to protest the mask mandate by not wearing one? There's no science on that. All that is is pure politics and what your viewpoint on this issue is. The mask has become the political symbol of this entire pandemic. You know, we put in that Wall Street Journal, you know, political cartoon because it really, it makes that point. The mask has become a symbol of government tyranny. Well, for the speaker in that case, I mean, let's unpack that argument for us a little bit. Yes, sir. Let's assume your client perceives it as a message of tyranny or oppression. Okay. Do you have to show that that's what the government intends the message to be perceived as, or is it simply enough that someone sincerely ascertains the message as having that content? You know, I think it's from the perspective of who's being forced to speak, number one. But this issue isn't just in a vacuum. What are they being forced to say? I mean, what is your argument for what is the government's forced message with the mandate? They're forcing them to wear this symbol, which, and again, and it's not just, and with all due respect to you guys, when you look at the record, it's not just my clients. We put in, I mean, there's been, you know, surveys. We put in all the media reports. You have the Wall Street Journal card.  And I get why you're going there, right? But where in the record can you point to how the government has conceived of this as a symbolic message versus something that they claim is for the health, safety, and welfare of the state? Well, if you recall, Your Honor, from reading the record, even when Governor Wolf was with another Democrat representative on a hot mic, right, they said, what are we going to do about our masks? We said, let's keep the masks on until we get up to the mic, then we'll take it off. Yeah, that's good political theater. That was a direct quote from that Democratic rep that Governor Wolf agreed with. It's political theater. This has become a symbol. So in direct response, Judge, to your question, it is in the record that the government understands that this, in fact, has a political component to it. It's not like a seat belt. To say that it's similar to a seat belt and wearing a bathing suit, you've got to look at the entire context of this. Just like burning a piece of cloth isn't necessarily as expressive, but if it's a flag in a political process. Go back to your component point. Yes, sir. Right? Because you raise kind of an interesting hypothetical. The state mandates a certain kind of beach attire, and it's doing so because it wants to have a message of public health and safety, right? But it also has an idea that perhaps there is a certain set of values regarding modesty or whatnot that should be communicated, right? So one of the components is the message that the speaker who's being compelled to follow it objects to. Is that enough? Your Honor, the context matters, right? The flag burning in the context of a political protest, that was plainly a message that was being conveyed. Well, if you have a mask-burning party, I'm pretty sure Texas will help you avoid prosecution, right? Well, Your Honor, your point is well taken. Because why? Because burning these things is a symbol. That might be a counter statement, right? It would be a counter statement. It's a political statement, right? Okay. Burning the mask is a political statement because the mask and the forcing of wearing a mask is forcing you to convey a political statement. I still haven't heard a good argument as to why this isn't moot, except maybe to criticize this Court for not on an expedited basis hearing an appeal when your case was rejected. If you made a good argument that this Court should have heard an expedited appeal, all that does is reinforce the notion, in my mind anyway, that this case is moot. And the next one, if a new mask mandate comes into play, that case will be live, very much live, and absolutely you're correct, it should be adjudicated. Your Honor, if you look at those two Supreme Court cases dealing specifically with COVID restrictions in the context of this pandemic, where the restrictions were rescinded in the Court, both voluntary cessation and capable repetition, this case is not moot. I see my time's up. Can we just go on contact tracing? Yeah, yeah. Can we just briefly address contact tracing? Yes, sir. Why do you have standing on that? Right. Your Honor, and again, it goes back to sort of that paradox of the fact that you have this exceedingly contagious disease, but somehow my clients are going to escape this contact tracing program. And in order to escape this contact tracing program so they don't fall into it, when you have these forced disclosures, this Court has said in the Salvation Army case, it creates a chilling effect. You look at what happened just with Mr. Parker. He went in for a simple sinus infection to a doctor, and they did the COVID test. He finds out he's positive. Next thing you know, even after the time where he's cleared, he gets this demand letter from you. You look at that letter. But we know the facts, Counselor. We're low on time. I understand. But doesn't your injury have to be certainly impending for prospective relief? And are there any allegations of possible future injury here? Yes, there is. In fact, you have them keeping their kids out of school. You have them not going to doctors for routine medical care because of this. You have them not going to their church. Those are their voluntary choices. Because of the mandates of the program. To say that it's not directly linked. That's sort of like saying I don't really like the idea of a Social Security number, so I'm not going to take a job because to get a job I need to provide a Social Security number. That can't confer standing, can it? I think there's a tax case on the Social Security, I don't recall right now, but there was with an injury. I think there was a Jehovah's Witness. My point is you can't. One of the things that troubles me about your argument is a lot of the injury that you point to for your clients is self-inflicted, right? Well, you know, don't report. Don't respond. I know your client, no one would want to get badgered with a bunch of text messages. I understand that. But your client isn't required to do anything, right, in response to the contact tracing in the future. If you go into a doctor, like what happened with Mr. Parker, the doctor is required to convey that information. Businesses are required to forward that information. So you have to avoid, in order to go to his church, you have to put your name down, and that information is available to the government. But to Judge Segarra's point, under the law you've got to show that they are certainly, or at the very least, likely to be affected by the contact tracing program in the future. Tell us what set of facts you expect to happen in the next month or year where it will be highly likely that your clients will be adversely affected by the contract tracing program. We had to file an amended complaint in the court below because, as indicated in this record, the Redmonds, they did not send their kids into public school because of the fear of the contact tracing program. The kids were suffering terribly, so they had to force to put them back into school. What happened? Contact trace. And they had to pull his kid out for two weeks. He had to miss events, schooling. It happened. And it happened to the Parkers. This isn't so remote that we don't have anybody that has been harmed by this contact tracing program. They have. His son was not positive, had no symptoms, nothing. But yet he was quarantined, literally under house arrest. You look at that letter. That letter is not a suggestion. That letter is a demand. They're saying that, look, we can call law enforcement and, if need be, we can petition a court to have you pulled out of your house and quarantine you somewhere else. You also have to concede that that's never been enforced, right? That's never been enforced. Judge, look at that letter. My goodness. If I'm a private person, I'm looking at that letter and I'm saying that law enforcement is going to – this is a direct threat. This wasn't a suggestion. The language of the letter is pretty harsh. And it does come with penalties. It comes with penalties. Any further questions? Thank you. Okay, thank you, counsel. We'll hear from you on rebuttal. Good morning. May it please the court, my name is Sean Kirkpatrick with the Pennsylvania Office of Attorney General. Here on behalf of Governor Wolf, Attorney General Shapiro, and the acting Secretary of Health, Alison Beam. And to begin with, to answer this court's primary concern about mootness and standing, I want to remind everyone that this is a motion for preliminary injunction. An injunction, especially preliminary injunction, is a scalpel, not a sword. So what is at issue is whether the district court abused its discretion in determining that – or in denying a specific request to enjoin certain orders. The one order, as this court recognizes, is the universal face covering order by the – But I don't remember you really clearly arguing there's nothing left to enjoin on that. Back then there wasn't. Well, now. It is now, Your Honor, yes. So you believe it's moot? I believe it is moot, yes, Your Honor, because on June 28th – As Judge Hartman points out, there's no 28J letter or anything. No. We happen to know it, but there was no argument made. And if that was a mistake, I apologize, Your Honor. And I can certainly supplement with the order terminating it. Well, we can deal with that here. But as to the exceptions to mootness, the voluntary cessation doctrine, I believe in the Catholic Diocese v. Cuomo case, those changes happened as it was going into the Supreme Court. And one of the elements of that doctrine is it cannot be terminated as a response to litigation. This was not terminated as a response to litigation. This continued for a year after it was originally issued back in June of 2020 and terminated. Do you concede that if the Commonwealth instituted a new mass mandate on October 1, that then the case would need to be litigated and decided, assuming somebody brought a challenge like the one plaintiffs bring here? Yes, Your Honor. It would be two things. Number one is, again, this request for injunctive relief is moot. This case, there's an amended complaint. We haven't answered that yet. So I'm not up here arguing for the mootness of the entire case, even though that may be the result. I am arguing that this particular issue is moot. Well, the contact tracing doesn't have anything to do with the – I mean, that's still in place, right? Absolutely, Your Honor. It's been in place for decades. The facts on the ground, however, have changed in the last six months. We have three vaccines that are very effective and widely available. The governor's authority to declare emergency declarations has been cabined by amendments to the Pennsylvania Constitution. So, frankly, I don't know the basis for my friend saying the governor can reinstate a mandate. It could be the Secretary of Health. Absolutely, Your Honor. Her authority under the – and I want to get the nomenclature right – disease prevention and control law absolutely still stands. There are mask mandates that still exist. The court requires it. We have it in schools and federal buildings, on public transportation and the like. But those are separate orders, and the reasonableness of those orders and the contents and parameters of those orders needs to be examined individually. We can't just say masks in toto are bad or else surgeries will become, I think, much more deadly. Can I focus you on – let's talk about standing on both, and then we can move to the merits. Absolutely. So go ahead and tell us about standing. I mean, you mentioned – well, go ahead. We candidly disagree with the district court about standing with regard to the mask mandate. It has become moot, but at the time we did not argue standing because we did not think that there was an absence of standing as to the mask mandate. With regard to the contact tracing, as the court, I believe, can recognize, in order to have standing there has to be a likelihood that the injury will reoccur. Again, this is injunctive relief, not a request for damages. So there's sort of two things on that. And one, as the district court found, was you need a Rube Goldbergian sort of series of dominoes that has to fall in order for the Parker family or the Redmond family to experience contract tracing again. They have to be within close contact of somebody who gets tested positive for COVID-19. That person then – that report gets sent up to the Department of Health. That person, when they're called, has to answer. As the Executive Deputy Secretary, Sarah Boteg, explained multiple times, and as the court found and as the disease prevention control law states, answering the phone is not mandatory. There are provisions in the law to get a court order to isolate or quarantine an individual through a due process hearing, but there is no enforcement mechanism to force someone to answer a phone. Well, I don't know. The letter, as your friend points out, is pretty severe. I mean, right? The letter – I mean, it's at least – I don't know whether I'd call it a threat, but surely it said law enforcement can get involved. And they can, Your Honor, although at the third page of that letter, it says if you do not follow these directives and self-quarantine, we can then go to a court, common pleas in your county, and get an order to force you to quarantine, at which point now we have a court order that can be enforced by the state police. But that happens after the initial contact. Has that ever happened? No. I'm sorry. Not with regard to this pandemic. That's all the information I have. With this pandemic? Yes. Well, I mean, that's one of the things that's troubling about this case is there's this incredibly heavy-handed language that Judge Shigaris just adverted to, and zero enforcement. So are we living in a world where we say a lot of – we, the government, in this case the Commonwealth of Pennsylvania, says a lot of things that it doesn't really mean? Because if you're going to tell someone, you know, you can't be six feet away from a family member, I mean, really? Can't hug your kid? Can't tie her shoes? Really? That's the Commonwealth's position? The letter was written, and this would have been June of 2020, while this disease was still being figured out. And numbers were – we didn't have a vaccine, and numbers were increasing. And the Department of Health, using CDC guidelines, which they, frankly, have always done throughout this pandemic, sent out letters that strongly encouraged individuals to protect other people in their family, because at that point, again, there were no vaccines. That's true, but isn't that cold comfort for a person who gets that letter today? I mean, granted, when it was written, yeah, maybe a whole lot wasn't known, but are you saying that the letter's different today, that people are getting? Yes, Your Honor. Is there something in the record about that? No, there is not, Your Honor. It is not. And that, again, sort of gets to the problem of standing is it's so attenuated that, for example, now, if you are vaccinated, you don't need to self-quarantine at all. If you are not vaccinated and you get a test, the quarantine is seven days. So if this is a question about whether this letter violated a right in the past because of the nature of its language, that's not before this Court. What is before this Court is the question, should this Court enjoin future conduct? And I'm not sure what future conduct we're talking about. Are we talking about 521.11 of the Disease Prevention and Control Law, which grants the Secretary this power? Are we talking about a reg? As I understand their argument, is that they're sort of put in a tricky spot, because if the thing's never going to be enforced and wasn't meant to be enforced, there's sort of no big deal. But how do we know that, you know, the police aren't going to show up at their house or they're going to be subjected to legal process? I mean, as I understand their argument, and maybe Mr. Mews will correct me, but what they're saying is we should be heard by a court of law before this gets even worse than they perceive it to be now. What's your response to that? Is it that, well, there's no risk that they'll be hailed into court for getting within six feet of their four-year-old, or I don't know how old their children are, I don't recall, but you see my point? Yes, Your Honor. I absolutely see your point. And I think, first, that there is, in fact, a judicial process, and I think that that's comforting. There is a mechanism to ensure that before someone is involuntarily removed or isolated or quarantined, there is, in fact, a judiciary looking over that. That doesn't seem comforting. That seems to some people, I assume, that's terrifying. What's comforting is the fact that it's never been invoked and apparently seems unlikely to be invoked. In this pandemic, absolutely, but this is if it were the bubonic plague or something like that, then maybe you have a more drastic situation. And that is why I don't want to call this toothless, because if we do have a situation where you have Ebola that is spreading and there is somebody who has Ebola and they get a letter that says, we're directing you to quarantine, self-quarantine, and they say no, and they go out and they start spreading it, my hope would be the Department of Health would be running to the court very quickly to get a court order so as this person can stop infecting others. And I think that that's, we do not view Jacobson versus Massachusetts as supplanting the various forms of scrutiny, but I think the import of that case is the idea that a community can defend itself from individuals who have a contagious disease. And the way it can do that has to be looked at, the reasonableness of that has to be looked at in the context of fighting a, in this case, global pandemic. And an individual's rights to create, you know, building a nuclear reactor in their backyard will affect their neighbors. And an individual who has a communicable disease, if they do not employ mitigation efforts, will have a devastating impact. People have died from this disease. So, and the last point I have is just, again, the nature of this appeal, which is of a motion for preliminary injunction. So as this court well knows, it uses a tripartite analysis. Findings of fact are clear error. Legal conclusions are de novo. But the ultimate decision of whether to grant or deny a preliminary injunction is abuse of discretion. And at the end of the, I think it's page 25 of the opinion, the district court does say, even if there was standing, or even if, yeah, even if there was standing, I still would not, in December of 2020, when we had 12,000 new cases a day and we still didn't have vaccines, I am not going to step in and stop these two mitigation efforts. And that the equities, given the totality of circumstances, weighed against it. I'd like to talk about that for a minute. I mean, as you rightfully point out, they posit this in a footnote at the very end, footnote 20, at the very end of the opinion. If we believe that there was standing here, don't we have to send it back for a more fulsome analysis of likelihood on the merits and the other traditional elements of a preliminary injunction? I don't believe, Your Honor. Obviously, this court can affirm on any basis. I think the record is pretty clear. And with regard to what the Department of Health testified to, but with regard to balancing that, that comes down to what that court felt at that moment, whether, you know, one side weighs more than the other. And the court said, given all the things the court talks about in the beginning of that opinion, that he would not have entered this preliminary injunction. Well, but my point is, this is an opinion about standing. And in a footnote, it just says, oh, yeah, if needed, you know, likelihood of success of the merits not met, balance of the equities against you, and, you know, denied. I mean, wouldn't we have to send it back for more? I understand what you're saying. We could do, we can affirm on any basis, I suppose. I see my time is up. May I answer? Sure. Okay. Thank you. Yes, this court can, I believe it should, especially given that there are jurisdictional issues. But that being said, if obviously the court feels it lacks proper guidance, this court has the power to send it back to be looked at again. But I think that that would be a mistake, frankly. And I think that the court certainly can belt and suspenders an opinion. And I'm not sure what else the court needed to articulate on that one point than what it has done in a footnote. Okay. Okay. Thank you. Thank you, Judge. And with response to your last question, I think this court can and should rule on the preliminary injunction issue on the merits of it. It goes back to this problem of trying to get a court to get a final hearing on these mandates that just keep changing, the goalposts just keep changing. You know, their witness testified, and this is going to the standing on the contact tracing, admitted that the government through the contact tracing program requires the forced disclosure of associations, including disclosure of, and this is practically a direct quote from her testimony, family members, friends, fellow church worshipers, business associates, and political associates. We sent this court a 28-J letter with regard to the Americans for Prosperity Foundation case, which is the most recent Supreme Court case dealing with the right of association. And the court said when it comes to the freedom of association, the protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals, the risk of a chilling effect on association is enough because the First Amendment freedoms need breathing space to survive. That breathing space is necessary. That chilling effect, and I think the record is pretty clear that there is a very strong chilling effect. You know, this idea that somehow that the government, well, you know, we impose these very heavy-handed, and you read that letter, this thing is heavy-handed. That mask mandate is heavy-handed, but we're not going to enforce them. To me, that doesn't go to the question of standing. It goes to the question of what's the government's interest in imposing these mandates on private citizens. We're talking about the government. And these aren't just suggestions. These are mandates. You violate that mask mandate, it comes with potential criminal penalties. You violate that letter, it doesn't require you to go to, you know, to wait until you get involuntarily admitted into a hospital. You violate the terms of that letter, it's a violation. And they even said to the law enforcement. Well, before anything bad can happen on contact tracing, as I understand it, they have to go seek a court order, right? No. You get that letter not from a court order. You get that letter directly. But the letter is a piece of paper. You don't have to follow it. You don't. It's your response to the point, you don't have to answer the phone. You're required. It wasn't answering the phone that got this letter. He got this letter because the doctor had to report his positive test. It had nothing to do with answering the phone. He got that letter. And that letter, if you violate the terms of that letter, that alone triggers penalties. It doesn't require you to go to court. And there are no constitutional safeguards. There's no way to appeal that. And even you look at the basis for the positive test. Wait, if you violate the letter, what happens? You are mandated under the public health code to abide by the terms of that letter, irrespective of whether or not they go to court. Right. And we know no one's ever suffered any adverse legal consequence to date in the Commonwealth of Pennsylvania for violating the terms of the letter, correct? So what's the state's interest in imposing these mandates upon people? Trying to convince people to behave in a way the state wants them to behave. Wouldn't that be the state's interest? No, if you look at the Griswold case, for example, one of the bases when they struck down the sale of contraception to married persons under the right to privacy, one of the main issues the court said is the government shouldn't be going into the bedrooms of marital couples and invading the sanctity of that family's sanctity. Was there a criminal prosecution in that case? None. There was no criminal prosecutions of anybody going into the bedroom. Same with Lawrence v. Texas. There were no criminal prosecutions. The fact of the threat is it alone. And you have to stay six feet from a family member under this letter, subject to law enforcement enforcing that, that's heavy-handed. My client has standing. The court should issue the injunction. Thank you. Thank you, counsel. We'll take this case under advisement and thank counsel for their excellent briefing and oral argument today in this interesting case.